UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| ROBERT E. ALLEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:05-CV-111 |
| | ) | Judge Thomas W. Phillips |
| METROPOLITAN LIFE | ) | |
| INSURANCE CO., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND OPINION

This civil action is before the Court on defendants' motion to dismiss or in the alternative to stay proceedings pending arbitration [Doc. 6]. The defendants assert that plaintiff's claim regarding long term disability is subject to mandatory arbitration pursuant to a Collective Bargaining Agreement. The plaintiff has responded in opposition, and the defendants have replied. For the reasons that follow, defendants' motion to dismiss without prejudice is **GRANTED**.

### Factual Background

The plaintiff, Robert E. Allen, ("Mr. Allen"), was employed as a machinist or chemical operator by Lockheed Martin Energy Systems, Inc. ("Energy Systems") from September 14, 1981 to October 24, 1997. During this time, the terms and conditions of Mr. Allen's employment were governed by a Collective Bargaining Agreement ("CBA") between Energy Systems and Mr. Allen's union, Atomic Trades and Labor Council.

1

On or about October 23, 1997, Mr. Allen asserts that he became totally and permanently disabled from his position as a worker for Energy Systems. Thereafter, he applied for disability benefits, following the instructions in his Summary Plan Description.

According to the Summary Plan Description provisions relevant to the disability plan in effect at the time Mr. Allen ceased his employment, disability benefits for Energy System's employees were separated into two categories, short term disability ("STD") benefits and long term disability ("LTD") benefits. The STD benefits would continue through the first six months of a participant's disability if the participant was unable to work due to illness, injury, or pregnancy. The LTD benefits could take effect after the first six months and would be payable once a claimant had been determined to be "totally disabled." LTD benefits were categorized into two distinct phases. Under the first phase of the LTD plan, an individual would be considered "totally disabled" during the first 24 months if he or she was unable to perform the duties of his or her regular job with the Company due to illness or injury and was under the regular care of a licensed practicing physician. After a participant had received LTD benefits for the first 24 months, the second phase of the LTD plan could take effect. A claimant would be considered "totally disabled" and receive benefits if he or she remained under the regular care of a licensed practicing physician and was unable to work at any job for which he or she might be qualified based on his or her education, training, and experience.

On account of Mr. Allen's injury, Metropolitan Life Insurance Company ("MetLife"), the designated claims administration and plan fiduciary, paid Mr. Allen's disability benefits

initially, but then terminated Mr. Allen's benefits on or about June 3, 1998.

On March 2, 2002, Mr. Allen filed a claim for disability benefits in the Chancery Court for Campbell County, Tennessee. The matter was then removed by the defendants to the United States District Court for the Eastern District of Tennessee at Knoxville. Thereafter, the parties resolved the dispute regarding the first phase of LTD benefits. However, as to the second phase of LTD benefits, the parties agreed to enter an Order of Compromise and Dismissal without Prejudice.[1] In other words, Mr. Allen's LTD benefits beyond the first two years remained in dispute.

Before the Order of Compromise and Dismissal was entered with the Court, defense counsel sent plaintiff's counsel two letters,[2] which essentially advised the plaintiff that he would have to comply with the CBA's medical arbitration provision, should it be necessary to resolve the claim for second phase LTD benefits.

The first letter specifically stated that, although Mr. Allen had exhausted his plan remedies as to the first phase of LTD benefits, "Mr. Allen [had] not yet pursued and exhausted his administrative remedies with respect to [LTD benefits beyond the first two years]." Defense counsel noted that Mr. Allen had not applied for the second phase of LTD benefits. Further, he advised Mr. Allen that his employment was subject to the CBA, which

---

[1] On April 30, 2003, the Court entered the Order of Compromise and Dismissal.

[2] Defense counsel sent plaintiff's counsel letters on April 14, 2003 and April 17, 2003.

provides for medical arbitration of claims for permanent and total disability (i.e., the second phase of LTD claims). Defense counsel warned that if Mr. Allen did not meet the criteria for the second phase of LTD benefits and wished to challenge the decision, he would need to proceed with his contracted remedies under the CBA's medical arbitration procedures before bringing an action in federal court. The letter was replete with case law upholding the validity and necessity of proceeding under the medical arbitration clause.

Defense counsel's second letter to plaintiff's counsel confirmed an agreement between the parties that Mr. Allen may apply for second phase LTD benefits, and if so, Mr. Allen would proceed "in accordance with the Plan, the Collective Bargaining Agreement, and any subsequent legal proceeding, should those be necessary."[3]

The applicable CBA provision regarding medical arbitration procedures is Article XVII Section 2, which states as follows:

> If a dispute arises as a result of an employee's claim that he or she is totally and permanently disabled as defined in the above referenced handbook or that such employee continues to be totally and permanently disabled the dispute shall be resolved in the following manner upon the filing with the Company of a written request for review by such employee not more than sixty (60) days after receipt of denial:
>
> The employee shall be examined by a physician appointed for the purpose by the Company and by a physician appointed for the purpose by the Union. If they disagree concerning whether the employee is totally and permanently disabled, the question shall be submitted to a third physician selected by such two physicians.

---

[3] Plaintiff's counsel confirmed the stated terms of the defense counsel's letter by signing and returning the correspondence to defense counsel.

> The medical opinion of the third physician, after examination by him or her of the employee and consultation with the other two physicians, shall be final and binding on the Company, the Union, and the employee. The fees and expenses of the third physician shall be shared equally by the Company and the Union.

On June 3, 2003, Mr. Allen sent a letter to defendants' counsel requesting a copy of the CBA. Mr. Allen asserts that he never received a copy of the CBA. The record is absent of any attempts on behalf of Mr. Allen to retrieve a copy of the CBA from the union. Further, there is no mention that Mr. Allen had asserted his right to examine plan documents, including pertinent insurance contracts and the CBA, at the plan administrator's office.

Thereafter, Mr. Allen filed a claim for the second phase of LTD benefits and requested additional information needed in order to complete and process his claim. In response, Mr. Allen received a copy of his entire claim file. On June 9, 2004, Allen received a decision from MetLife denying his claim for second phase LTD benefits. The correspondence stated that Mr. Allen could appeal the decision by sending in a written request for appeal and further that, "[i]n the event [his] appeal [was] denied in whole or in part, [he would] have the right to bring a civil action under Section 502(a) of the Employee Retirement Income Security Act of 1974."

Mr. Allen then appealed the decision and submitted additional information on September 8, 2004. On December 27, 2004, MetLife issued its final denial. The letter from MetLife stated that Mr. Johnson had exhausted all of his administrative remedies under the

5

plan and that no further appeals would be considered. The letter further indicated that he had the right to bring a civil action under Section 502(a) of the Employee Retirement Income Security Act of 1974.

In response, Mr. Allen commenced this civil action against MetLife and Energy Systems in the Chancery Court of Campbell County, Tennessee on January 24, 2005. Defendants then timely removed the action on February 28, 2005. In his complaint, Mr. Allen asserts that he has been denied second phase of LTD benefits by his employer and that he "has otherwise exhausted all the remedies to which he was aware for obtaining disability benefits."

In response, the defendants assert that Mr. Allen has by-passed the mandatory medical arbitration procedures by filing a complaint with the Court. Therefore, the defendants have filed this motion to dismiss or in the alternative to stay proceedings pending arbitration [Doc. 6].

### Standard of Review

A motion to dismiss under Rule 12(b)(6), Federal Rules of Civil Procedure, requires the court to construe the complaint in the light most favorable to the plaintiff, accept all the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of her claims that would entitle him to relief. *Meador v. Cabinet for Human Resources,* 902 F.2d 474, 475 (6th Cir.) *cert. denied,* 498 U.S. 867

(1990). The court may not grant such a motion to dismiss based upon a disbelief of a complaint's factual allegations. *Lawler v. Marshall,* 898 F.2d 1196, 1198 (6thCir.1990); *Miller v. Currie,* 50 F.3d 373, 377 (6thCir.1995) (noting that courts should not weigh evidence or evaluate the credibility of witnesses). The court must liberally construe the complaint in favor of the party opposing the motion. *Id.* However, the complaint must articulate more than a bare assertion of legal conclusions. *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434 (6thCir.1988). "[The] complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id.* (citations omitted).

## **Analysis**

Claims involving rights created by a CBA are governed by the Labor Management Relations Act ("LMRA"). *Aloisi v. Lockheed Martin Energy Sys.,* 321 F.3d 551, 556 (6thCir.2003). According to *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652, 85 S.CT.614, 616, 13 L.E.2d 580 (1964), before an employee can assert his or her own rights under the LMRA in a court of law, he or she must follow the administrative procedures outlined in the contract. Further, the Sixth Circuit Court of Appeals in *Baxter v. C.A., Muer Corp.*, 941 F.2d 451, 453 (6thCir.1991), noted:

> Congress' apparent intent in mandating [that insurer's maintain] internal claims procedures was to minimize the number of frivolous ERISA lawsuits; promote the consistent treatment of benefit claims; provide a nonadversarial dispute resolution process; and decrease the cost and time of claims settlement. It would be "anomalous" if the same reason which lead Congress to require plans to provide remedies for ERISA claimants did not lead courts

7

to see that those remedies are regularly utilized.

Thus, according to the intent of Congress and judicial interpretation, ERISA does not supercede federal law, and a claimant must first exhaust administrative procedures, as he or she is required to do under the LMRA.

In its motion, the defendants assert that the arbitration provision IS valid and enforceable and that the plaintiff must first exhaust his administrative remedies before bringing an action in court. The plaintiff has responded that due to the defendants' failure to give notice and otherwise proceed with the medical examination, the defendants have waived any provisions of the CBA requiring completion of medical arbitration procedures. In effect, the plaintiff is asserting that the defendants have relinquished their ability to assert arbitral jurisdiction over the plaintiff's LTD benefit claim.

The court's function in deciding questions concerning arbitral jurisdiction is extremely narrow. *Paper, Allied-Industrial, Chemical & Energy Workers International Union, Local 5-0550, Local 5-272 v. Air Products & Chemicals, Inc.*, 300 F.3d 667, 677 (6thCir.2002). Indeed, the courts are generally limited to 1) assuring that the claim is governed by the contract; 2) ordering parties to arbitration unless the arbitration clause is not susceptible of an interpretation that covers the asserted dispute; and 3) refraining from reviewing the merits of an award so long as it draws its essence from the CBA.[4] *Id.* Although the court's function in arbitral jurisdiction is limited, certain generalized court-created exceptions to an

---

[4] The court in *Paper, Allied-Industrial* strongly endorsed the use of arbitration as a means by which disputes arising under CBAs may be resolved.

exhaustion of remedies requirement can invalidate an arbitration clause. These exceptions include the following: 1) a showing of irreparable harm, which is either job related or will affect the exercise of employee rights under the Labor Management Reporting Disclosure Act ("LMRDA"); 2) a showing that it would be futile to require the plaintiff to internally exhaust remedies; and 3) a showing that the plaintiff has been wrongfully denied meaningful access to internal procedures. *Lucas v. Warner & Swasey Company*, 475 F.Supp. 1071, 1074 (E.D.Pa.1979). The third exception arises where one party has the sole power to invoke the internal procedures and has not allowed another party access. *Id.* However, the other party must have made attempts to have the internal procedures initiated. *Id.*

As noted above, defense counsel advised the plaintiff's counsel that Mr. Allen would be required to submit to medical arbitration procedures if a dispute regarding the second phase of LTD benefits arose. The plaintiff's counsel acknowledged this communication by signing the last of two advisory letters from defense counsel when an agreement was met regarding the compromise and dismissal of the first phase of LTD benefits. Further, although the CBA was not given to the plaintiff, there is no evidence that the plaintiff lacked access to or knowledge about the CBA's medical arbitration procedures. On the other hand, the defendants are also at fault in that the MetLife letters of denial did not conform with the medical arbitration procedures, as previously recited to the plaintiff. Indeed, the letters failed to recite or mention the medical arbitration procedures of Article XVII Section

9

2 of the CBA.[5]

In view of the actions between the parties, it appears that both parties are blameworthy for plaintiff's failure to exhaust internal remedies. Nonetheless, the issue here is not who was at fault throughout the entire misunderstanding, but whether plaintiff's failure to exhaust internal remedies can be excused under any one of the three court-created exceptions.

In the case before the Court, there is no futility in requiring plaintiff to submit to medical arbitration procedures. Foreseeably, the situation could be resolved under the arbitration process pursuant to Article XVII Section 2 of the CBA. Secondly, there is no evidence to support the contention that the plaintiff would suffer irreparable harm if he is not permitted to bring his action in federal court immediately. Lastly, the plaintiff has not been denied access to medical arbitration procedures. There is no showing that the defendants disallowed the medical arbitration process in its communications with the plaintiff. In fact, the defendants now seek to initiate the arbitration process in this matter.

The decision of a district court to apply the exhaustion of administrative remedies

---

[5]However, the Court notes that while technically deficient, the exhaustion requirement for ERISA claims should not be excused. See *Kent v. United of Omaha Life Ins. Co.*, 96 F.3d 803, 807 (6thCir.1996) (The court held that there was substantial compliance with the notice requirement based on the myriad of communication between claimant, her counsel, and the insured.); *see also Perrino v. Southern Bell Telephone & Telegraph Co.*, 209 F.3d. 1309, 1317-18 (11thCir.2000) (stating that "though employees should not have their ERISA claims adversely affected by an employer's technical noncompliance with ERISA regulations, so too, they should not be able to avoid the exhaustion requirement where technical deficiencies in an ERISA claims' procedure do not hinder effective administrative review of their claims.").

requirement for ERISA claims is a highly discretionary decision. *Perrino v. Southern Bell Telephone & Telegraph Co.*, 209 F.3d, 1309, 1316 (11thCir.2000). The record appears absent of any evidence to support a viable exception allowing waiver of the exhaustion requirement. Further, it is clear from the CBA's medical arbitration procedures provision that the parties to the contract have manifested an intent to forego the courts and settle their disputes by means of a private internal remedy. See *Smith v. Union Carbide Corp.*, 350 F.2d 258 (6thCir.1965).[6] Therefore, the Court is compelled to adhere to the proscribed reasoning and mandates of Congress requiring initial exhaustion of internal remedies before an action can be brought in federal court under LMRA and ERISA. Accordingly, the defendants' motion to dismiss without prejudice will be granted.

**ENTER:**

s/ Thomas W. Phillips
United States District Judge

---

[6]The Court of Appeals for the Sixth Circuit in *Smith* had occasion to treat an arbitration provision included in a pension agreement in which any dispute over the disability of a claimant was to be settled by a doctor appointed by each party. In the event of disagreement between the two doctors, a third doctor was to be appointed and, in consultation with the other doctors, decide the matter. As in the case before the Court, the medical arbitration procedures provision was enforced.

11